**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMERICA BANK | ) | |
| | ) | |
| Plaintiff, | ) | **FILED: JULY 24, 2008** |
| | ) | **08CV4219** |
| v. | ) | **JUDGE ZAGEL** |
| | ) **Case No.** | **MAGISTRATE JUDGE KEYS** |
| 3 MORE FEET, INC., d/b/a PAPA'S | ) | **AEE** |
| PIZZA, MICHAEL ANDERSON, JOSEPH | ) | |
| MITCHELL, CHRISTINE ANDERSON, | ) | |
| SANDRA MITCHELL | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR BREACH
## OF CONTRACT

NOW COMES Comerica Bank ("Comerica"), Plaintiff herein, by and through its

attorney, Kurt M. Carlson of Tishler & Wald, Ltd., and for its Complaint for Breach of

Contract against 3 MORE FEET, INC d/b/a PAPA'S PIZZA ("Papa's Pizza"),

MICHAEL ANDERSON ("Mr. Anderson"),  JOSPEH MITCHELL ("Mr. Mitchell"),

CHRISTINE ANDERSON ("Ms. Anderson"), and SANDRA MITCHELL ("Ms.

Mitchell"), Defendants herein, respectfully states as follows:

### Parties and Jurisdiction

1.      Plaintiff, Comerica Bank, is a Texas banking corporation, with its

principal place of business at 1717 Main Street, Dallas, Texas 75201.

2.      Defendant, Mr. Anderson, is an individual whose principal residence is

430 Parkwood Circle, South Elgin IL 60177.

3.      Defendant, Ms. Anderson, is an individual whose principal residence is

430 Parkwood Circle, South Elgin IL 60177.

4.      Defendant, Mr. Mitchell, is an individual whose principal residence is 24812 Cherokee Drive, Barrington, Illinois.

5.      Defendant, Ms. Mitchell, is an individual whose principal residence is 24812 Cherokee Drive, Barrington, Illinois.

6.      Defendant, Papa's Pizza, is an Illinois corporation whose principal place of business is 747 S. Plum Grove Road, Roselle, Illinois 60172.

7.      The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

8.      Venue and jurisdiction are proper in this district.

### Count I - $550,000.00 Promissory Note

9.      Plaintiff incorporates by reference the allegations of Paragraphs 1 through 8 of this Complaint as though fully restated here in their entirety.

10.     On or about December 24, 2003 Papa's Pizza executed a Promissory Note in the original principal amount of $550,000.00 (the "Note").  A copy of the Note is attached as **Exhibit A**.

11.     The Note is in default and despite demand, Papa's Pizza has failed and refused to pay the amounts due and owing to Comerica.

12.     Numerous defaults have occurred on the Note, such as:  a) failure to make payment in full when due, b) having an adverse change in the financial condition or business operation that Comerica believes may materially affect Papa's Pizza ability to pay this Note.  See Events of Default set forth in the Note previously attached as **Exhibit A**, at page 3, Paragraph 4.

13.    Due and owing as of July 21, 2008, under the Note, is the principal amount of $492,355.14, accrued interest of $124,507.34, and late charges of $11,910.43. Interest continues to accrue at a per diem rate of $111.29 after July 21, 2008.

14.    Plaintiff has satisfied all of its obligations and conditions precedent required of it in order to enforce the Note.

15.    The Note further provides that Comerica may recover, in addition to the principal balance and interest due, its reasonable attorneys' fees and costs incurred in enforcing its terms.

WHEREFORE, Comerica prays that a judgment be entered against Papa's Pizza in the amount of $628,772.91, plus interest at the per diem rate of $111.29, Plaintiff's reasonable attorneys' fees and costs, and for such other and further relief as the Court deems just and appropriate.

### Count II—Breach of Contract—Unconditional Guarantee

16.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 15 of this Complaint as though fully restated here in their entirety.

17.    On or about December 24, 2004, Mr. Anderson executed an unlimited, continuing Unconditional Guarantee in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of to Comerica.  A copy of the Unconditional Guarantee is attached hereto as **Exhibit B** and made a part hereof.

18.    Papa's Pizza has defaulted under the terms of the Promissory Note and despite demand, Mr. Anderson has failed to make payment under the Unconditional Guarantee.

3

19.     Due and owing under the Unconditional Guarantee is the sum of $628,722.91 plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica prays that a judgment be entered against Mr. Anderson in the amount of $628,772.91, plus interest at the per diem rate of $111.29, Plaintiff's reasonable attorneys' fees and costs, and for such other and further relief as the Court deems just and appropriate.

### Count III—Breach of Contract—Unconditional Guarantee

20.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 19 of this Complaint as though fully restated here in their entirety.

21.     On or about December 24, 2004, Ms. Anderson executed an unlimited, continuing Unconditional Guarantee in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of to Comerica.  A copy of the Unconditional Guarantee is attached hereto as **Exhibit C** and made a part hereof.

22.     Papa's Pizza has defaulted under the terms of the Promissory Note and despite demand, Ms. Anderson has failed to make payment under the Unconditional Guarantee.

23.     Due and owing under the Unconditional Guarantee is the sum of $628,772.91 plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica prays that a judgment be entered against Ms. Anderson in the amount of $628,772.91, plus interest at the per diem rate of $111.29, Plaintiff's reasonable attorneys' fees and costs, and for such other and further relief as the Court deems just and appropriate.

### Count IV—Breach of Contract—Unconditional Guarantee

24.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23 of this Complaint as though fully restated here in their entirety.

25.    On or about December 24, 2004, Mr. Mitchell executed an unlimited, continuing Unconditional Guarantee in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of to Comerica.  A copy of the Unconditional Guarantee is attached hereto as **Exhibit D** and made a part hereof.

26.    Papa's Pizza has defaulted under the terms of the Promissory Note and despite demand, Mr. Mitchell has failed to make payment under the Unconditional Guarantee.

27.    Due and owing under the Unconditional Guarantee is the sum of $628,772.91 plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica prays that a judgment be entered against Mr. Mitchell in the amount of $628,772.91 plus interest at the per diem rate of $111.29, Plaintiff's reasonable attorneys' fees and costs, and for such other and further relief as the Court deems just and appropriate.

### Count V—Breach of Contract—Unconditional Guarantee

28.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 27 of this Complaint as though fully restated here in their entirety.

29.    On or about December 24, 2004, Ms. Mitchell executed an unlimited, continuing Unconditional Guarantee in favor of Comerica, guaranteeing payment to Comerica of all indebtedness of to Comerica.  A copy of the Unconditional Guarantee is attached hereto as **Exhibit E** and made a part hereof.

30. Papa's Pizza has defaulted under the terms of the Promissory Note and despite demand, Ms. Mitchell has failed to make payment under the Unconditional Guarantee.

31. Due and owing under the Unconditional Guarantee is the sum of $628,772.91 plus additional interest, costs and attorneys' fees.

WHEREFORE, Comerica prays that a judgment be entered against Ms. Mitchell in the amount of $628,772.91, plus interest at the per diem rate of $111.29, Plaintiff's reasonable attorneys' fees and costs, and for such other and further relief as the Court deems just and appropriate.

Date: July 24 , 2008

Respectfully submitted,

COMERICA BANK

By: _____/s/ Kurt M. Carlson_____
One of Its Attorneys

Kurt M. Carlson (6236568)
TISHLER & WALD, LTD.
200 S. Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 876-3800
kcarlson@tishlerandwald.com

# U.S. Small Business Administration

## NOTE

| | |
|---|---|
| SBA Loan # | PLP 704-656-4007 |
| SBA Loan Name | PAPA'S PIZZA |
| Date | DECEMBER 24, 2003 |
| Loan Amount | $550,000.00 |
| Interest Rate | WALL STREET JOURNAL PRIME RATE + 2.50% PER ANNUM |
| Borrower | 3 MORE FEET, INC. |
| Operating Company | N/A |
| Lender | COMERICA BANK |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of

    _____ FIVE HUNDRED FIFTY THOUSAND and NO/100 _____ Dollars,

    interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

**EXHIBIT A**

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Note will mature in ten (10) years from the date of initial disbursement.

The interest rate on this Note will fluctuate. The initial interest rate is six and one-half percent (6.50%) per year. This initial rate is the prime rate on the date SBA received the loan application, plus two and one-half percent (2.50%). The initial interest rate must remain in effect until the first change period begins.

Borrower must pay principal and interest payments of $6,246.00 every month, beginning one month from the month of initial disbursement on this Note; payments must be made on the same day as the date of initial disbursement on this Note in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives a payment, then to bring principal current, then to pay any late fees, and shall apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "Change Period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in The Wall Street Journal on the next business day.

The adjusted interest rate shall be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each Change Period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change. The initial interest rate must remain in effect until the first Change Period begins.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the Note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

All remaining principal and accrued interest is due and payable ten (10) years from the date of initial disbursement.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5% of the unpaid portion of the regularly scheduled payment.

Loan Prepayment: Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay twenty percent (20%) or less of the unpaid principal balance at any time without notice. If Borrower prepays more than twenty percent (20%) and the Loan has been sold on the secondary market, Borrower must:

    a.   Give Lender written notice;
    b.   Pay all accrued interest; and
    c.   If the prepayment is received less than twenty-one (21) days from the date Lender receives the notice, pay an amount equal to twenty-one (21) days' interest from the date Lender receives the notice, less any interest accrued during the twenty-one (21) days and paid under subparagraph b., above.

If Borrower does not prepay within thirty (30) days from the date Lender receives the notice, Borrower must give Lender a new notice.

PAYMENT TERMS CONTINUED:

N/A.

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

    A.   Fails to do anything required by this Note and other Loan Documents;

    B.   Defaults on any other loan with Lender;

    C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

    D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

    E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

    F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

    G.   Fails to pay any taxes when due;

    H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;

    I.   Has a receiver or liquidator appointed for any part of their business or property;

    J.   Makes an assignment for the benefit of creditors;

    K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

    L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

    M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

    A.   Require immediate payment of all amounts owing under this Note;

    B.   Collect all amounts owing from any Borrower or Guarantor;

    C.   File suit and obtain judgment;

    D.   Take possession of any Collateral; or

    E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.


7.  WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.


8.  SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.


9.  GENERAL PROVISIONS:

A.  All individuals and entities signing this Note are jointly and severally liable.

B.  Borrower waives all suretyship defenses.

C.  Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.  Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.  Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.  If any part of this Note is unenforceable, all other parts remain in effect.

G.  To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.  STATE-SPECIFIC PROVISIONS:

NONE.

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

3 MORE FEET, INC.,
an Illinois corporation

By: _____
       Michael Anderson, President



U.S. Small Business Administration

## UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 704-656-4007 |
|---|---|
| SBA Loan Name | PAPA'S PIZZA |
| Guarantor | MICHAEL ANDERSON |
| Borrower | 3 MORE FEET, INC. |
| Lender | COMERICA BANK |
| Date | DECEMBER 24, 2003 |
| Note Amount | $550,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated _____ DECEMBER 24, 2003 _____ in the principal amount of _____ FIVE HUNDRED FIFTY THOUSAND and NO/100 _____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## EXHIBIT B

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
   1)   Require presentment, protest, or demand upon Borrower;
   2)   Redeem any Collateral before or after Lender disposes of it;
   3)   Have any disposition of Collateral advertised; and
   4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
   1)   Any default under the Note;
   2)   Presentment, dishonor, protest, or demand;
   3)   Execution of the Note;
   4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)   Any change in the financial condition or business operations of Borrower or any guarantor;
   6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
   1)   Lender failed to obtain any guarantee;
   2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)   Lender or others improperly valued or inspected the Collateral;
   4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

NONE.

11.  GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.  GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

_____
Michael Anderson

STATE OF ILLINOIS          §

COUNTY OF COOK          §

This Unconditional Guarantee was acknowledged before me, the undersigned authority, on this ____ 24th day of December, 2003 by Michael Anderson.

_____
Notary Public in and for the
State of Illinois

DOMINIC J MANCINI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/22/06



U.S. Small Business Administration

# UNCONDITIONAL LIMITED GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 704-656-4007 |
| SBA Loan Name | PAPA'S PIZZA |
| Guarantor | CHRISTINE ANDERSON |
| Borrower | 3 MORE FEET, INC. |
| Lender | COMERICA BANK |
| Date | DECEMBER 24, 2003 |
| Note Amount | $550,000.00 |

1.   GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note, as limited below. Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

   The "Note" is the promissory note dated _____DECEMBER 24, 2003_____ in the principal amount of _____FIVE HUNDRED FIFTY THOUSAND and NO/100_____ Dollars, from Borrower to Lender.  It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

**EXHIBIT C**

4.　PAYMENT LIMITATION: *(Check only one box)*

☐　BALANCE REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the total of all amounts owing under the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐　PRINCIPAL REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the outstanding principal balance of the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐　MAXIMUM LIABILITY: The guarantee is limited to Guarantor's payment of $ _____ .

☐　PERCENTAGE: The guarantee is limited to Guarantor's payment of _____ % of all amounts owing under the Note at the time demand is first made on Guarantor, plus the same percentage of any accrued interest and other costs charged to the Note after demand, until Guarantor fully performs this Guarantee.

☐　TIME:　The guarantee is of all amounts owing under the Note. The guarantee will continue until _____ years after the date of the Note (the "Guarantee Period"). If Borrower is in default at the end of the Guarantee Period, the guarantee will continue until all defaults are cured.

☑　COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the following Collateral pledged by Guarantor:

> Real property located at 430 Parkwood Circle, South Elgin, Illinois.

☐　COMMUNITY PROPERTY OR SPOUSAL INTEREST:　The guarantee is limited to Guarantor's community property or spousal interest in collateral pledged to secure the Note or any guarantee.

5.  LENDER'S GENERAL POWERS:

    Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

    A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C.  Release any Borrower or any guarantor of the Note;

    D.  Compromise or settle with the Borrower or any guarantor of the Note;

    E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

    F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

    G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

    H.  Exercise any rights it has, including those in the Note and other Loan Documents.

    These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

6.  FEDERAL LAW:

    When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

7.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

    To the extent permitted by law,

    A.  Guarantor waives all rights to:
        1)  Require presentment, protest, or demand upon Borrower;
        2)  Redeem any Collateral before or after Lender disposes of it;
        3)  Have any disposition of Collateral advertised; and
        4)  Require a valuation of Collateral before or after Lender disposes of it.

    B.  Guarantor waives any notice of:
        1)  Any default under the Note;
        2)  Presentment, dishonor, protest, or demand;
        3)  Execution of the Note;
        4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
        5)  Any change in the financial condition or business operations of Borrower or any guarantor;
        6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
        7)  The time or place of any sale or other disposition of Collateral.

    C.  Guarantor waives defenses based upon any claim that:
        1)  Lender failed to obtain any guarantee;
        2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
        3)  Lender or others improperly valued or inspected the Collateral;
        4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

8.    DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

9.    SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and Lender includes successors and assigns.

10.   GENERAL PROVISIONS:

A.    ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.    SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.    SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.    JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.    DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.    FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.    LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.    ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.    SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.    CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11. STATE-SPECIFIC PROVISIONS:

NONE.

12. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

13. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

Christine Anderson

STATE OF ILLINOIS          §

COUNTY OF COOK          §

This Unconditional Guarantee was acknowledged before me, the undersigned authority, on this 24th day of December, 2003 by Christine Anderson.

OFFICIAL SEAL
DOMINIC J MANCINI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 03/22/06

Notary Public in and for the
State of Illinois



U.S. Small Business Administration

# UNCONDITIONAL LIMITED GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 704-656-4007 |
| SBA Loan Name | PAPA'S PIZZA |
| Guarantor | JOSEPH MITCHELL |
| Borrower | 3 MORE FEET, INC. |
| Lender | COMERICA BANK |
| Date | DECEMBER 24, 2003 |
| Note Amount | $550,000.00 |

1.   GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note, as limited below. Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.   NOTE:

The "Note" is the promissory note dated _____ DECEMBER 24, 2003 _____ in the principal amount of

_____ FIVE HUNDRED FIFTY THOUSAND and NO/100 _____ Dollars,

from Borrower to Lender.   It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.   DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

**EXHIBIT D**

4.   PAYMENT LIMITATION: *(Check only one box)*

☐   BALANCE REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the total of all amounts owing under the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐   PRINCIPAL REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the outstanding principal balance of the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐   MAXIMUM LIABILITY: The guarantee is limited to Guarantor's payment of  $ _____ .

☐   PERCENTAGE:  The guarantee is limited to Guarantor's payment of _____ % of all  amounts owing under the Note at the time demand is first made on Guarantor, plus the same percentage of any accrued interest and other costs charged to the Note after demand, until Guarantor fully performs this Guarantee.

☐   TIME:   The guarantee is of all amounts owing under the Note.  The guarantee will continue until _____ years after the date of the Note (the "Guarantee Period").  If Borrower is in default at the end of the Guarantee Period, the guarantee will continue until all defaults are cured.

☑   COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the following Collateral pledged by Guarantor:

> Real property located at 24812 Cherokee Drive, Barrington, Illinois.

☐   COMMUNITY PROPERTY OR SPOUSAL INTEREST:  The guarantee is limited to Guarantor's community property or spousal interest in collateral pledged to secure the Note or any guarantee.



5.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

6.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

7.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
    1)   Require presentment, protest, or demand upon Borrower;
    2)   Redeem any Collateral before or after Lender disposes of it;
    3)   Have any disposition of Collateral advertised; and
    4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
    1)   Any default under the Note;
    2)   Presentment, dishonor, protest, or demand;
    3)   Execution of the Note;
    4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)   Any change in the financial condition or business operations of Borrower or any guarantor;
    6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
    1)   Lender failed to obtain any guarantee;
    2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)   Lender or others improperly valued or inspected the Collateral;
    4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)   Lender impaired the Collateral;

6)   Lender did not dispose of any of the Collateral;

7)   Lender did not conduct a commercially reasonable sale;

8)   Lender did not obtain the fair market value of the Collateral;

9)   Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)  Lender made errors or omissions in Loan Documents or administration of the Loan;

12)  Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13)  Lender impaired Guarantor's suretyship rights;

14)  Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)  Borrower has avoided liability on the Note; or

16)  Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

8.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

9.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes successors, and Lender includes successors and assigns.

10.  GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11. STATE-SPECIFIC PROVISIONS:

NONE.

12.  **GUARANTOR ACKNOWLEDGMENT OF TERMS.**

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

13.  **GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

_Joseph Mitchell_

Joseph Mitchell

STATE OF ILLINOIS       §

COUNTY OF COOK          §

This Unconditional Guarantee was acknowledged before me, the undersigned authority, on this 24th day of December, 2003 by Joseph Mitchell.

Notary Public in and for the
State of Illinois

DOMINIC J MANCINI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/22/05



U.S. Small Business Administration

# UNCONDITIONAL LIMITED GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 704-656-4007 |
| SBA Loan Name | PAPA'S PIZZA |
| Guarantor | SANDRA MITCHELL |
| Borrower | 3 MORE FEET, INC. |
| Lender | COMERICA BANK |
| Date | DECEMBER 24, 2003 |
| Note Amount | $550,000.00 |

1. GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note, as limited below. Guarantor must pay all amounts owing under this Guarantee when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

   The "Note" is the promissory note dated _____ DECEMBER 24, 2003 _____ in the principal amount of _____ FIVE HUNDRED FIFTY THOUSAND and NO/100 _____ Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

**EXHIBIT E**

SBA Form 148L (10/98)

4.  PAYMENT LIMITATION: *(Check only one box)*

☐  BALANCE REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the total of all amounts owing under the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐  PRINCIPAL REDUCTION: The guarantee is of all amounts owing under the Note, and will continue until the outstanding principal balance of the Note is reduced below $ _____ , at which time Guarantor will be released from liability if the Note is not in default.

☐  MAXIMUM LIABILITY: The guarantee is limited to Guarantor's payment of $ _____ .

☐  PERCENTAGE: The guarantee is limited to Guarantor's payment of _____ % of all amounts owing under the Note at the time demand is first made on Guarantor, plus the same percentage of any accrued interest and other costs charged to the Note after demand, until Guarantor fully performs this Guarantee.

☐  TIME:  The guarantee is of all amounts owing under the Note.  The guarantee will continue until _____ years after the date of the Note (the "Guarantee Period").  If Borrower is in default at the end of the Guarantee Period, the guarantee will continue until all defaults are cured.

☑  COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the following Collateral pledged by Guarantor:

> Real property located at 24812 Cherokee Drive, Barrington, Illinois.

☐  COMMUNITY PROPERTY OR SPOUSAL INTEREST:  The guarantee is limited to Guarantor's community property or spousal interest in collateral pledged to secure the Note or any guarantee.

5.  LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

6.  FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

7.  RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)　Lender impaired the Collateral;

6)　Lender did not dispose of any of the Collateral;

7)　Lender did not conduct a commercially reasonable sale;

8)　Lender did not obtain the fair market value of the Collateral;

9)　Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10)　The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11)　Lender made errors or omissions in Loan Documents or administration of the Loan;

12)　Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:

13)　Lender impaired Guarantor's suretyship rights;

14)　Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15)　Borrower has avoided liability on the Note; or

16)　Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

8.　**DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

9.　**SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes successors, and Lender includes successors and assigns.

10.　**GENERAL PROVISIONS:**

A.　ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.　SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.　SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.　JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.　DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.　FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.　LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.　ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.　SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.　CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

11. STATE-SPECIFIC PROVISIONS:

NONE.

12. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

13. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

*Sandra Mitchell*
Sandra Mitchell

STATE OF ILLINOIS      §

COUNTY OF COOK       §

This Unconditional Guarantee was acknowledged before me, the undersigned authority, on this 24ᵗʰ day of December, 2003 by Sandra Mitchell.

Notary Public in and for the
State of Illinois

DOMINIC J MANCINI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/22/08

## **VERIFICATION**

I, Charles Prack, state under oath that I have read the foregoing Verified Complaint and, if sworn as a witness, would competently and truthfully testify that the allegations contained therein are true and accurate to the best of my knowledge and belief.



Charles Prack
Assistant Vice President
Comerica Bank

Signed and sworn to before me
this 21 day of July 2008.

_____
Notary Public

SHIRLEY CONANT
My Commission Expires
April 18, 2012